# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ROBERT DeHERRERA,

    Plaintiff,

vs.                                                                Civil No. 99-0215 JC/WWD

CORRECTIONS CORPORATION
OF AMERICA, INC., et al.,

    Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

    1.   THIS MATTER comes before the Court *sua sponte*. Plaintiff, who is incarcerated and is proceeding *pro se* and *in forma pauperis*, alleges a violation of his rights under the Eighth Amendment based on denial of medical care.[1] Roy Kropinak, M.D. is the sole remaining Defendant in the case. He provided medical services for inmates at the time of Plaintiff's injury under a private contract with the Santa Fe Detention Center ("SFDC"). Plaintiff's claims against all other Defendants have been dismissed through private resolution. See docket # 17.

    2.   As a threshold matter, Defendant Kropinak's role as a physician privately contracting to provide medical services does not shield him from liability in a claim brought under § 1983, contrary to Defendant's position. See West v. Atkins, 487 U.S. 42, 55-58 (1988). Physicians working in state prisons, who help to fulfill the state's Eighth Amendment obligation to inmates and who typically are the only health professionals available to care for incarcerated persons, are

---

[1] Defendant's Answer is fashioned as a standard response to a state law claim of negligence even though Plaintiff's claims are based on Eighth Amendment violations.

persons who may "fairly be said to be state actors." See Montano v. Hedgepath, 120 F.3d 844, 849 (8th Cir. 1997) (citing West); cmp. Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1456 (10th Cir.1995) (distinguishing case at bar where defendants were not carrying out an affirmative obligation of the state from situation where private individual such as physician providing contract services to prison was considered a state actor).

**Legal Standards**

3. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Griffin v. Steeltek, Inc., 160 F.3d 591, 593 (10th Cir.1998). Although neither party has moved for summary judgment in this case, district courts are "widely acknowledged to possess the power to enter summary judgment sua sponte." Durtsche v. American Colloid Co., 958 F.2d 1007, 1009 n.1 (10th Cir. 1992) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986)).

4. Deliberate indifference by prison officials to a prisoner's serious medical need is "cruel and unusual punishment" and violates the Eighth Amendment. Brown v. Zavaras, 63 F.3d 967, 969 (10th Cir. 1995). Thus, to state a valid claim under § 1983, DeHerrera must demonstrate that Defendant Kropinak showed "deliberate indifference" to his medical needs, and those needs are serious. Estelle v. Gamble, 429 U.S. 97, 104 (1976).

**Discussion**

5. According to the Complaint and Amended Complaint,[2] Plaintiff was injured during an

---

[2] Plaintiff was given 30 days to amend his complaint by a November 9, 1999 Court order (see docket # 31). He attached a copy to his motion (see docket # 23), but has not filed an Amended Complaint as of this date. The Amended Complaint does not differ substantially from the original complaint except to provide additional underlying facts and to eliminate previous requests for redress under the Fourth, Fifth and Fourteenth Amendments. Plaintiff's claims under

incident involving his restraint by prison guards on March 13, 1997. Despite complaints of pain in his left lower leg, he alleges that he received no treatment until March 15th, when an x-ray was ordered but could not be taken because the imaging center was closed, and that he continued to be denied treatment for several days after that until he saw an orthopedic surgeon. Plaintiff further alleges that despite the x-ray report which showed fractures, Kropinak failed to write any orders for either pain medication or assistive devices and did not receive crutches until a couple of days after he saw the orthopedic surgeon.

    6. On November 12, 1999, Plaintiff submitted copies of medical records (docket # 34) as a "rebuttal defense" to Defendant's position. Notwithstanding DeHerrera's allegations of "undue pain and residual injury" and assuming Plaintiff's medical need was in fact "serious," there is sufficient evidence from these records for this Court to find that Defendant Kropinak's conduct does not show the deliberate indifference required to trigger liability under the Eighth Amendment. Because the medical records are not identified as separate exhibits, I will refer to specific documents by their dates and relate the events surrounding Plaintiff's claims chronologically.

    7. A March 13th or 14th incident report (the date appears corrected, but it's not clear which date is correct) relates a "take down and restraint of uncooperative inmate" and in which

---

either version of the complaint would be analyzed under the "deliberate indifference" standard which applies to allegations of denial of medical care under the Eighth Amendment. See Lopez v. LeMaster, 172 F.3d 756, 762 (10th Cir. 1999); Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998) (claims concerning conditions of confinement "remain[ ] bounded by the Eighth Amendment, the explicit textual source of constitutional protection in the prison context"); see also Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir.1996) (inmate's claim of inadequate medical care analyzed under Eighth Amendment and not more general provisions of substantive due process).
.

Plaintiff complained of a "broken left leg" and "extreme" pain. A Medical Encounter Record ("MER") dated the same day (signed by M. Archuleta) shows that although a "deformity" was noted, there was no redness, bruising or warmth to the site. It was also noted that Plaintiff had an old healed gunshot wound to the left lower leg. The nurse attempted to apply an ankle wrap but was "unsuccessful" because the "patient was uncooperative."[3] Plaintiff was given Ibuprofen for the pain and his leg was checked several times more that same day.

8. On March 15th, when Plaintiff continued to complain of pain, his leg was elevated and ice and ace bandage were applied. Dr. Kropinak was called at his home and at this point ordered outside x-rays to be taken immediately and prescribed Motrin. However, according to a medical transport note dated March 15th, the imaging center was closed by the time Plaintiff and his escort arrived there. (MER dated 3/17/97 and signed by M. Archuleta; MER dated 3/17/97 signed by Defendant).

9. On March 16th, Plaintiff complained of left ankle pain and the nurse noted a "slight discoloration" and "minimal swelling." The ankle was kept wrapped in an ace bandage, with a notation that he would see the doctor the following day. Another March 16th MER notes that Plaintiff was in "no apparent distress" and was to be checked by the evening nurse on duty ("P.M. nurse").

10. On March 17th, Dr. Kropinak saw Plaintiff and left orders that he was not to walk on that leg and that he "must have crutches or wheelchair until evaluated by orthopedics." (MER dated 3/17/97 and signed by Dr. Kropinak). He also continued Plaintiff on Motrin twice a day.

---

[3] The records, except for those which I note were written by Dr. Kropinak, were signed off by various licensed practical nurses (e.g., "Stacey Halls," "M. Archuleta").

Another MER from March 17th MER (signed by M. Archuleta) notes that Plaintiff was up in a wheelchair using the phone, that he was scheduled for x-rays, that he was in "no apparent distress" and that he had taken his "pain pills" in the morning. X-rays were taken on March 17th (Medical Transport Form dated 3/17/97).

11. A memo from the Medical Department to the U.S. Marshals Service also dated March 17th states that upon Dr. Kropinak's recommendation, Plaintiff had been diagnosed with fractures in the left ankle and that he was scheduled for an orthopedic consult on March 19th.[4] The memo noted that x-rays would be sent separately to the surgeon.

12. The records include a MER dated March 17th (signed by" [illegible] Tapia") which notes that the orthopedic consult "took a while to schedule" because there was no swelling or deformity and because Plaintiff "did not start complaining about pain until later on. (3-15-97)." The note goes on to state that x-rays could not be taken that day when they were ordered because Santa Fe Imaging had already closed when they were initially ordered, and had to be postponed until Monday, March 17th. According to the same MER, Plaintiff was originally scheduled to see the orthopedic surgeon, Jan Bear, M.D. on March 24th, but the appointment was moved up to March 19th when the urgency of Plaintiff's situation was explained.

13. It would seem that this note is conveniently self-serving and even perhaps a bit suspect in its authenticity, given that earlier notes had in fact noted a deformity (see above, ¶ 7) and "minimal swelling" (¶ 9) and Plaintiff had indeed complained of pain prior to March 16th. (¶ 7). However, these factual inconsistencies do not affect the substance of Plaintiff's claims against

---

[4] Apparently the memo was generated to provide for security during the medical transport.

Dr. Kropinak, since Defendant was first notified about Plaintiff's situation on March 15th at which point orders were immediately given for x-rays, specialist consult, assistive devices (a wheelchair) and medication.

14. MER's from March 18th and 19th, before Plaintiff saw Dr. Bear, reflect that Plaintiff continued to complain of pain, still used a wheelchair and took "pain" medication.

15. According to Dr. Bear's consultative report dated March 19th, Plaintiff had moderate swelling in his ankle and his foot but there was no area of "significant point tenderness." The left lower leg appeared to be "clinically fairly well aligned." Dr. Bear read the x-ray to show two fracture points (a "long oblique fracture of the distal tibia just below his prior gun shot wound and a proximal fibular fracture. . . ."). Plaintiff was placed in a long leg bent knee cast and instructed to avoid weight bearing on that leg. A follow-up visit was scheduled in two weeks.

16. From the few other records included beyond the initial consult visit, it appears that Plaintiff was visited daily on SFDC infirmary rounds and continued on Motrin. A MER dated March 31, 1997 and signed by Defendant shows that Dr. Kropinak reduced the dosage amount of the Motrin prescription while increasing dosage frequency, noting that Dr. Bear had not prescribed any pain medication for DeHerrera. A later MER indicates that the dosage was again increased to almost double the dosage. (MER dated 3/23/97 signed by M. Archuleta).

17. Plaintiff's records also include an operative report dated October 14, 1997 describing an open reduction performed on Plaintiff's left tibia, based on a diagnosis of "nonunion comminuted displaced fracture left distal tibia." Although this report seems to indicate that surgery was later found to be necessary in the treatment of Plaintiff's injury, I find that it does not undercut a portrayal of Defendant's conduct as not rising to the level of deliberate indifference.

18. Plaintiff alleges that he was deprived of adequate treatment in the form of crutches or a cast application before his orthopedic consultation and that he was refused pain medication. He was, however, treated conservatively (ace, ice, ibuprofen, elevation) before Dr. Kropinak was contacted at home, and upon Dr. Kropinak's phone order was given a wheelchair and prescribed Motrin.[5]

19. Plaintiff might have preferred something other than Motrin for his pain, and crutches to a wheelchair, but the Eighth Amendment does not include a right to the medication of one's choice or a particular course of treatment. What may be cognizable under a § 1983 claim brought under the Eighth Amendment is a claim where a defendant shows "deliberate refusal to provide medical attention." Green v. Branson et al, 108 F.3d 1296, 1303 (10th Cir. 1997). That is not present here.

20. Similarly, Plaintiff's allegations of delay in medical treatment have no merit. First, any delay in treatment was *de minimis*. Kropinak was contacted the day after Plaintiff first brought his complaints to the infirmary. Further, during that time, he was assessed by a nurse, observed frequently and treated conservatively. Second, any alleged delay before March 15th cannot be attributed to Defendant Kropinak since he was not contacted until that day. When Kropinak was called, he set into motion a care plan for Plaintiff, including orders for medication, assistive devices (wheelchair or crutches), x-rays and an orthopedic consult. Third, any other delays Plaintiff suffered were beyond Defendant's control, e.g., the imaging center being closed on a Friday afternoon by the time Plaintiff arrived there; getting an appointment with an outside

---

[5] The records do not indicate that Dr. Bear prescribed pain medication. In fact, a March 31st MER by Dr. Kropinak states that the surgeon "did not order any pain meds for the [patient] originally."

specialist. Fourth, the delays as described by Plaintiff are not of the kind envisioned as redressable under the Eighth Amendment.[6]

21. In sum, I find that there are no genuine issues of material fact which would allow a reasonable jury to find that Defendant Kropinak acted with a sufficiently culpable state of mind to find him liable under the Eighth Amendment. I recommend entering summary judgment *sua sponte* for Defendant and a dismissal of all of Plaintiff's claims against Defendant.

## Recommendation

I recommend that summary judgment be granted *sua sponte* for Defendant and a dismissal with prejudice of all of Plaintiff's claims against Defendant. Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

　　　　　　　　　　　　　　　　　　　　_[signature]_
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

---

[6] Delays that courts have found to violate the Eighth Amendment have frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems. See Hunt et al v. Uphoff et al., ___ F.3d ___, 1999 WL 1268340 (10th Cir.(Wyo.)) (citing cases). Officials may also be held liable when the delay results in a lifelong handicap or a permanent loss. Id.